THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, George F. Goll, being duly sworn, depose and state as follows:

## I. INTRODUCTION

1. I have been a Special Agent with the Diplomatic Security Service ("DSS") since August 2017. While employed by DSS, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. I have gained experience through training and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256(8)(A) and referred to in this Affidavit as "child sexual abuse material" or "CSAM") in all forms of media including computer media. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the operational techniques and organizational structure of child pornography distribution networks as well as the traits and characteristics of child pornography collectors and possessors and their use of computers or other electronic and media devices to facilitate the collection, possession, trading, and distribution of child pornography.

2. I am presently assigned to DSS's Criminal Fraud Investigations ("CFI") Branch as a criminal investigator, where I specialize in investigations concerning human trafficking, crimes committed by foreign diplomatic personnel within the U.S., visa fraud, passport fraud, human trafficking, identity theft, and bank fraud investigations. During the course of those investigations, I have examined large volumes of electronic communications to develop probable cause. I have

also executed searches and seizures of electronically stored information and provided guidance to other law enforcement officers regarding how to execute searches and seizures of electronically stored information. Prior to joining DSS, I was a Special Agent with the Air Force Office of Special Investigations AFOSI since 2011. In my 14 years as a law enforcement officer, I regularly examined facts and evidence to develop probable cause. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, 2252A, 2422, and 2423, and I am authorized by law to request a search warrant.

## II. **PURPOSE OF THE AFFIDAVIT**

3. I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. § 2703 for all content and other information associated with the account lee92lee@icloud.com (the "Subject Account"), maintained and controlled by Keepsafe Software Inc. (the "Provider" or "Keepsafe"), headquartered at 427 Bryant Street, in San Francisco, California. The information to be searched is described in the following paragraphs and in Attachment A to the proposed warrant.

4. As detailed below, there is probable cause to believe that the Subject Account contains evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251(a) and (e) (sexual exploitation of a child and conspiracy to commit sexual exploitation of a child), 2252A(a)(2) and (b)(1) (receipt and distribution of child pornography and conspiracy to receive and distribute child pornography), and 2252A(a)(5)(B) and (b)(2) (possession of child pornography and conspiracy to possess child pornography) (the "Subject Offenses"). This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers, as well as my training and experience concerning the use of online storage systems in criminal activity. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I

2

have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**A. Services and Records of the Provider**

5. From my training, experience, and review of publicly available information, I have learned the following, among other things, about the Provider:

    a. Keepsafe is a United States Company that provides, among other things, cloud-based data and storage, data security, and data privacy services.

    b. Keepsafe's services can be accessed from certain devices, including Apple and Android devices, via mobile applications ("apps"). Keepsafe asserts that its apps promote data privacy and security through the use of, among other things, cipher AES-256 encryption.

    c. Keepsafe Photo Vault is a Keepsafe app that "secures personal photos and videos by locking them down in a photo vault with safe PIN protection, fingerprint authentication, and military-grade encryption." Keepsafe offers a "basic" Keepsafe Photo Vault service free of charge and a "premium" service with greater storage space and other enhanced features for paying subscribers.

    d. Photos and videos can be imported to Keepsafe Photo Vault directly from a cellphone's photo gallery. Photos and videos that have been imported to Keepsafe Photo Vault are stored on servers controlled by Keepsafe and can be accessed using Keepsafe Photo Vault even after they have been deleted from a cellphone's photo gallery.

    e. Keepsafe Photo Vault can be downloaded and installed on certain devices, including Apple iPhones, through the Apple App Store, and Android devices, through Google Play, an online marketplace for apps, games, and other digital products run by Google.

f. Keepsafe also produces an app called "Keepsafe Calculator," which is a "decoy" app that appears to be a calculator app, but which has the same functionality as Keepsafe Photo Vault. Keepsafe Calculator can be downloaded and installed on certain devices, including Android devices, through Google Play. Keepsafe Photo Vault and Keepsafe Calculator are referred to herein collectively as "Keepsafe Photo Vault."

g. In order to access Keepsafe services, including Keepsafe Photo Vault, a user must create a Keepsafe account. The account identifier for a Keepsafe account is an email address provided by the user. The Keepsafe account can be used to access Keepsafe services only after the user accesses and responds to a "verification email" sent by Keepsafe to that email address. Once the user has completed the email address verification procedure, the user must create a unique "pin code" for the Keepsafe account.

h. To log in to a Keepsafe account, a user must enter the email address and unique "pin code" for that account, among other verification procedures.

i. When a new device, or a device on which Keepsafe Photo Vault has been reinstalled after previously having been uninstalled, is used to log in to an existing Keepsafe account, Keepsafe sends an email containing a four-letter access code to the email address for the existing Keepsafe account. The user must then enter the four-letter access code in the Keepsafe Photo Vault app in order to access the account.

6. In my training and experience, evidence of who was using an encrypted cloud-based storage service and from where, and evidence related to criminal activity of the kind described above, may be found in the files described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United

States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

7. For example, photos, videos, electronic communications, and other files stored on an encrypted cloud-based storage system are often created and used in furtherance of criminal activity.

8. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

9. Therefore, Keepsafe's servers are likely to contain photos, videos, electronic communications, and other files concerning subscribers and their use of Keepsafe's services. In my training and experience, such information may constitute evidence of the Subject Offenses.

**B. Jurisdiction and Authority to Issue Warrant**

10. Pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A), the Government may require a provider of an electronic communications service or a remote computing service, such as the Provider, to disclose all stored content and all non-content records or other information pertaining to a subscriber, by obtaining a warrant issued using the procedures described in the Federal Rules of Criminal Procedure.

11. A search warrant under § 2703 may be issued by "any district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

12. When the Government obtains records under § 2703 pursuant to a search warrant, the Government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2) & (3). Additionally, the Government may obtain an order precluding

the Provider from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize an investigation. 18 U.S.C. § 2705(b).

### III. Probable Cause

#### A. Probable Cause Regarding the Subject Offenses

13. On or about December 1, 2025, the Honorable Joseph Reeder, United States Magistrate Judge, Southern District of West Virginia, authorized warrants for the search of subject Justin L. Wiegand's ("Wiegand") person (Case No. 3:25-mj-00077) and residence (Case No. 3:25-mj-00076) (the "December Warrants"). On December 3, 2025, agents of the Diplomatic Security Service executed those warrants and seized an iPhone 13 model MLML3LL/A (iPhone 13 Cellphone) from Wiegand's person and a Samsung model B140DL (Samsung Cellphone) from his residence. The affidavits accompanying the December Warrants are incorporated by reference herein.

14. A review of the contents of the iPhone 13 Cellphone showed that the iPhone 13 Cellphone contained the KeepSafe application registered to the Subject Account. That application, among other things, contained one 16-minute and 30-second video with filename "7b46020387c765e50e7fbe2104b2e04b1beccbc6_video.mp4." That video featured a watermark "@cp833" and showed an adult male on a couch with a prepubescent female. The adult male French-kissed the prepubescent female, undressed her, placed her on his lap, intermittently laid her on her back and stomach, and engaged in oral sex both vaginally and anally. The prepubescent female then, at the apparent direction of the adult male, performed oral sex on the adult male, and engaged in masturbation while the adult male masturbated, after which the adult male penetrated the prepubescent female's vagina with his penis. At the conclusion of the video, the adult male

ejaculated on the prepubescent female's face. Metadata obtained from the video showed that it was downloaded to the iPhone 13 Cellphone via the Keepsafe application on June 20, 2024.

15. Additionally, a review of records on the iPhone 13 Cellphone revealed Wiegand first subscribed to a Keepsafe premium account on October 10, 2023, and most recently accessed his Keepsafe account on December 2, 2025, the day before the phone was seized by law enforcement. Wiegand purchased monthly Keepsafe subscriptions in October, November, and December of 2023 and purchased yearly subscriptions in February of 2024 and March of 2025. According to Keepsafe's website, a free account can store 200 items, while a premium account can store 10,000 items.

16. A review of the contents of the Samsung Cellphone showed that the Samsung Cellphone contained, among other things, a 12-minute and 51-second video recorded on the Samsung Cellphone on July 29, 2025. That video depicted the minor child of Wiegand's ex-girlfriend undressing and getting into and out of the shower in the bathroom at Wiegand's residence. Of note, another video, featuring Wiegand's ex-girlfriend in the bathroom of Wiegand's apartment, was filmed on the same day. Wiegand can be seen placing the phone in the bathroom, and at the 11-minute and 51-second mark of the video featuring the minor child of Wiegand's ex-girlfriend, Wiegand can be seen adjusting the camera. In both videos, Wiegand's face is clearly visible.

17. While agents executed the search Wiegand's residence, I interviewed Wiegand, who admitted he used the iPhone 13 Cellphone and the Samsung Cellphone to access an encrypted messaging application that he used to purchase and receive child pornography. During that interview, Wiegand gave consent to agents to download and access that same encrypted messaging

application. Contained within his account were hundreds of video thumbnail previews depicting child pornography. Wiegand admitted to purchasing, receiving, and viewing those videos.

18. On or about December 3, 2025, the Honorable Joseph Reeder, United States Magistrate Judge, Southern District of West Virginia, authorized a complaint (the "Complaint") in Case No. 3:25-mj-00082 charging Justin Wiegand with a violation of Title 18, United States Code, Sections 2252A(a)(2) and (b)(1) (receipt and attempted receipt of child pornography), and issued an arrest warrant (the "Arrest Warrant").

19. On or about December 16, 2025, a grand jury sitting in this District returned an Indictment in Case No. 3:25-cr-00197 charging Wiegand with three counts of knowingly receiving and attempting to receive child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(2) and (b)(1).

20. Based on information found on the iPhone 13 Cellphone, I have learned that the Subject Account was used to open a Keepsafe account, which was accessed as recently as December 2, 2025, and that the Subject used the Keepsafe account to store and access CSAM.

### B. Probable Cause Justifying Search of the Subject Account

21. Based on my training and experience and my participation in this and other child pornography investigations, I know that individuals who commit child pornography offenses routinely use encrypted cloud-based storage systems such as Keepsafe to store child pornography; communications with co-conspirators or victims; and contact information of co-conspirators or victims, including telephone numbers, email addresses, and identifiers for instant messaging and social medial accounts.

22. Based on the foregoing, I respectfully submit that there is probable cause to believe that the Subject Account contains additional evidence, fruits, and instrumentalities of the Subject Offenses.

23. In particular, for the period of October 10, 2023, (on or about the date the Subject Account was opened), through the present, I believe that the Subject Account is likely to contain the following information:

    a. Evidence of the Subject Offenses, including messages, photographs, videos, and other evidence of the solicitation, production, possession, or transmission of child pornography or threatening to share such photographs or videos;

    b. Communications constituting evidence of the Subject Offenses (*e.g.*, communications requesting, soliciting or containing nude or sexually explicit photographs or videos);

    c. Location of other evidence of the Subject Offenses (*e.g.*, messages reflecting other online accounts or electronic devices potentially containing relevant evidence);

    d. Evidence concerning the identity or location of, and communications with, coconspirators in the Subject Offenses;

    e. Address books or contact lists; and

    f. Passwords or other information needed to access user's computer or other online accounts.

## IV. Review of the Information Obtained Pursuant to the Warrant

24. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for service of a search warrant issued under § 2703, or for the collection or production of responsive records. Accordingly, the warrant requested herein will be transmitted to the Provider, which shall be directed to produce a digital copy of any responsive records to law enforcement personnel within 14 days from the date of service. Notwithstanding Title 18, United States Code, Section 2252A, the Provider shall be authorized to deliver encrypted files responsive to the proposed warrant by delivering encrypted files electronically. Law enforcement personnel (who

may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will retain the records and review them for evidence, fruits, and instrumentalities of the Subject Offenses as specified in Section III of Attachment A to the proposed warrant.

25. If records provided by Keepsafe are encrypted, law enforcement will use the PIN associated with the Subject Account that was saved to Wiegand's iPhone 13 Cellphone to decrypt and review the information.

26. In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the Subject Offenses, including but not limited to undertaking a cursory inspection of all photos, videos, and other files within the Subject Account. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files, such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant files in an account, as it is impossible to know in advance all of the unique words or phrases that investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but that do not contain any keywords that an agent is likely to search for.

## V. Conclusion

27. Based on the foregoing, I respectfully request that the Court issue the warrant sought herein pursuant to the applicable provisions of the Stored Communications Act, 18 U.S.C. § 2703(b)(1)(A) (for contents) and § 2703(c)(1)(A) (for records and other information), and the relevant provisions of Federal Rule of Criminal Procedure 41.

Further your affiant sayeth not.

George F Goll
Digitally signed by George F Goll
Date: 2026.02.20 15:43:39 -05'00'

George Goll
Special Agent
Diplomatic Security Service

Signed and sworn to by telephonic means on this 23rd day of February, 2026.

JOSEPH K. REEDER
UNITED STATES MAGISTRATE JUDGE

11